UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GLOBAL WORKPLACE SOLUTIONS, LLC,

    Plaintiff/Counterclaim Defendant,

        v.

ANN HROVAT,

    Defendant/Counterclaim Plaintiff/
    Third-Party Plaintiff,

        v.

PLANES MOVING AND STORAGE, INC.,

    Third-Party Defendant.

Case No. 1:21-CV-686

Judge Michael R. Barrett

**OPINION & ORDER**

This matter is before the Court upon the Motion to Dismiss or, in the Alternative, to Stay Pending Arbitration filed by Plaintiff/Counterclaim Defendant Global Workplace Solutions, LLC ("GWS") and Third-Party Defendant Planes Moving and Storage, Inc. ("Planes"). (Doc. 26). Defendant/Counterclaim Plaintiff Ann Hrovat filed a Memorandum in Opposition to the Motion to Dismiss (Doc. 43), to which GWS and Planes (collectively, "GWS/Planes") filed a Reply in Support of their Motion to Dismiss (Doc. 47).

    **I.    BACKGROUND**

Hrovat was employed by GWS and/or Planes from 2009 until she resigned in August 2020. (Doc. 26, PageID 354). Throughout the course of her employment, Hrovat performed work for both GWS and Planes. (Doc. 19-2, PageID 318). At the time of her resignation, Hrovat had the title of "Vice President Client Services." (Doc. 13, PageID 220). Subsequent to her resignation, Hrovat found herself in litigation with GWS regarding

1

a non-solicitation provision. (Doc. 1, PageID 121). This non-solicitation provision was part of a Sales Consultant Agreement ("Agreement") signed by Hrovat while she was working for GWS. (*Id.*, PageID 132-140). While both GWS and Hrovat were signatories to the Agreement, Planes was not. (Doc. 43, PageID 2060).

During the course of the litigation between Hrovat and GWS, Hrovat filed a Counterclaim against GWS and Planes, adding Planes as a Third-Party Defendant. (Doc. 19-2). In her Counterclaim, Hrovat alleges that GWS/Planes discriminated against her on the basis of her gender by paying her significantly less than similarly situated male peers, in violation of the Equal Pay Act, 29 U.S.C. § 206, *et seq.* (Count I), and Ohio Rev. Code § 4112 (Count II). (*Id.*, PageID 320-21).

In response to Hrovat's Counterclaim, GWS/Planes filed a Motion to Dismiss or, in the Alternative, to Stay Pending Arbitration. (Doc. 26). GWS/Planes asks the Court to dismiss Hrovat's claims based on an arbitration provision contained in the Agreement signed by Hrovat while she was employed at GWS. (*Id.*, PageID 351). In response, Hrovat argues that the arbitration provision is unenforceable because it would prevent her from being able to effectively vindicate her statutory claims, based in part on the prohibitive costs that mandatory arbitration would entail. (Doc. 43, PageID 2046-47).

**II.    ANALYSIS**

Federal Rule of Civil Procedure 12(b)(6) is the "proper vehicle" for dismissing a case in favor of arbitration. *Pinnacle Design/Build Grp., Inc. v. Kelchner, Inc.*, 490 F.Supp.3d 1257, 1262 (S.D. Ohio 2020). This is because a failure to pursue arbitration despite the existence of a compulsory arbitration provision is the equivalent of failing to state a claim. *Teamsters Loc. Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286

2

(6th Cir. 2014). Additionally, when evaluating motions to compel arbitration, courts treat the facts as they would in a ruling on a summary judgement motion, construing all facts and reasonable inferences in a light most favorable to the non-moving party. *Raasch v. NCR Corp.*, 254 F.Supp.2d 847, 851 (S.D. Ohio 2003). The Supreme Court has held, and the Sixth Circuit has followed, that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Although both GWS/Planes and Hrovat have devoted substantial briefing to the enforceability of the arbitration provision contained in the Agreement, there must first be a determination of *who* gets to decide the enforceability; more specifically, it must be assessed whether the authority rests with the Court or an arbitrator. After that issue is resolved, it must then be determined whether Planes, although a non-signatory to the Agreement, is able to rely on the arbitration provision and subject Hrovat's claims against it to arbitration. Finally, if the Court determines that an arbitrator is responsible for assessing the enforceability of the arbitration provision, the Court must then decide whether this case should be stayed or dismissed pending the arbitrator's resolution of that issue. These three issues will be addressed, in turn.

### A. Should the Court or an arbitrator decide the enforceability of the arbitration provision?

Before analyzing whether the Court or an arbitrator is the appropriate party to assess the enforceability of the arbitration provision, the specific language of the arbitration provision contained in the Agreement should be noted. The beginning of the

3

arbitration provision contains language pertaining to the Agreement as a whole:

> Except as provided in Section 13(d) below, Employer and Sales Consultant agree that any dispute or controversy arising out of, relating to or in connection with the interpretation, validity, construction, performance, breach or termination of the Agreement or the relationship of the parties shall be settled by binding arbitration to be held in Cincinnati, Ohio, in accordance with the Commercial Arbitration Rules of the American Arbitration Association as then in effect (the "Rules").

(Doc. 1-2, PageID 156).

The arbitration provision then goes on to reiterate the language above and to provide specific language pertaining to the interpretation, validity, and construction of the arbitration provision itself:

> SALES CONSULTANT HAS READ AND UNDERSTANDS SECTION 13, WHICH DISCUSSES ARBITRATION. SALES CONSULTANT UNDERSTANDS THAT BY SIGNING THIS AGREEMENT, SALES CONSULTANT AGREES TO SUBMIT ANY CLAIMS ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT, OR THE INTERPRETATION, VALIDITY, CONSTRUCTION, PERFORMANCE, BREACH OF TERMINATION THEREOF, TO BINDING ARBITRATION, EXCEPT AS PROVIDED IN SECTION 13(d), AND THAT THIS ARBITRATION CLAUSE CONSTITUTES A WAIVER OF SALES CONSULTANT'S RIGHT TO A JURY TRIAL AND RELATES TO THE RESOLUTION OF ALL DISPUTES RELATING TO ALL ASPECTS OF THE RELATIONSHIP BETWEEN THE PARTIES.

(*Id.*, PageID 157).

The latter portion of the arbitration provision is called a "delegation provision" and is an agreement to arbitrate threshold issues concerning the arbitration provision itself. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). These so-called "gateway provisions" are agreed upon by the parties to a contract and are used to allow the parties to arbitrate questions of arbitrability. *Id.* at 68-69. Further, a gateway provision is simply

4

considered an additional agreement to the arbitration provision itself and is thus enforceable by a court. *Id.* at 70. As the Court in *Rent-A-Center* made clear, if an arbitration agreement contains a delegation provision, a party opposing the enforcement of an arbitration clause must do so through arbitration, unless that party specifically challenges the delegation provision. *Id.* at 72. Stated another way, a party must specifically challenge the delegation clause's enforceability, separate and apart from any challenge to the arbitration provision or the underlying agreement as a whole. *Id.* at 70. Without such a challenge, questions regarding the enforceability of an arbitration clause must be answered by an arbitrator. *Id.*

Turning to this matter, Hrovat makes several arguments challenging the enforceability of the arbitration provision, even citing to specific language in the provision. (Doc. 43, PageID 2049). Despite these challenges, Hrovat fails to adequately challenge the delegation provision itself. Most notably, Hrovat challenges the arbitration provision due to its inability to vindicate her statutory rights and the prohibitive costs associated with the arbitration of such rights. (*Id.*, PageID 2049-50). Hrovat also cites specific language from the arbitration provision, such as the cost-sharing and punitive damage provisions. (*Id.*, PageID 2049, 2053). Despite Hrovat's challenges to the overall arbitration provision and specific clauses contained within, she fails to adequately challenge the delegation provision itself. As a result, the enforceability of the arbitration provision is to be determined by an arbitrator, and not the Court.

### B. Is the non-signatory but affiliated third-party Planes able to rely on the arbitration clause in the Agreement to compel arbitration of Hrovat's claims?

Hrovat argues that even if the Court decides to subject the enforceability of the

5

arbitration provision with respect to her claims against GWS to arbitration, the Court should not do the same with respect to her claims against Planes. (Doc. 43, PageID 2060). Hrovat bases this argument on the fact that only GWS is a party to the Agreement, and not Planes.

The Sixth Circuit has specifically addressed this issue and took a contrary position to Hrovat's argument. *See In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 883 (6th Cir. 2021). In *StockX*, the court stated that where a signatory to an agreement opposes arbitration by arguing that the non-signatory seeking to compel arbitration does not have the authority to do so, there is an issue of enforceability. *Id.* As previously discussed, issues concerning enforceability absent a direct challenge to the delegation provision are questions to be decided via arbitration. *Id.* Thus, whether Planes can rely on the arbitration provision in the Agreement to compel arbitration is a question for an arbitrator, not the Court.

Even in the absence of the case law from the Sixth Circuit pertaining to non-signatories, Hrovat has definitively alleged that Planes and GWS "operated as a single business, sharing common members of leadership, employees, officers and resources." (Doc. 19-2, PageID 318). Hrovat further alleged that "for customers as well as employees alike, it was difficult to distinguish where one entity began and the other ended." (*Id.*). Based on how Hrovat has characterized Planes and GWS, the Court cannot allow her to treat Planes and GWS as separate entities only in certain instances. Therefore, the enforceability of the arbitration clause as it pertains to Hrovat's claims against Planes is also an issue to be decided by an arbitrator.

**C. Should this action be stayed or dismissed pending the arbitration of the enforceability of the arbitration provision in the Agreement?**

The Federal Arbitration Act ("FAA") provides clear statutory language that once a court refers an issue to arbitration, the court should "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Despite this seemingly clear language, the Sixth Circuit has taken a slightly different approach, interpreting it to allow courts to dismiss the action where all claims are referred to arbitration. *See Hensel v. Cargill, Inc.*, 198 F.3d 245 (6th Cir. 1999). Stated another way, courts in the Sixth Circuit have generally allowed for the dismissal of an action, rather than a stay, "where it is clear the entire controversy between the parties will be resolved by arbitration." *See, e.g., Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 380 (6th Cir. 2021); *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009).

Although the Sixth Circuit previously permitted the dismissal of actions when arbitrable issues were found, that course of action is no longer permissible given the Supreme Court's recent decision in *Smith v. Spizzirri,* 601 U.S. 472 (2024). The Court in *Smith*, addressing facts materially similar to those present here, addressed whether Section 3 of the FAA permits a court to dismiss a case instead of staying it when a party requests a stay pending arbitration. *Id.* at 474. The Court answered no, explaining that "when a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Id.* at 478. The Court primarily based its reasoning on the plain statutory language of the FAA and how courts "*shall*…stay the action until such arbitration has been had." *Id.* at 475 (emphasis added).

7

Because Hrovat has requested a stay of the proceedings pending arbitration, in opposition to GWS/Planes's motion to dismiss, *Smith* governs this case and requires that the action be stayed. Additionally, it is important to note that the Court has only referred to arbitration the issue of the arbitration provision's enforceability. As such, the arbitrator may freely decide that the arbitration provision is either enforceable or unenforceable. Should the arbitration clause be found unenforceable, Hrovat must still be afforded the opportunity to pursue her claims in the courts. Additionally, as Hrovat indicates, claims under the Equal Pay Act are subject to a relatively short statute of limitations. *See* 29 U.S.C. § 255. Hrovat would therefore be left with no mechanism to pursue her claims should the Court now dismiss her claims. For all these reasons, the Court will stay this action pending arbitration.

### III. CONCLUSION

Based on the foregoing, GWS/Planes's Motion to Dismiss or, in the Alternative, to Stay Pending Arbitration, (Doc. 26), is **DENIED in PART and GRANTED in PART**. This matter is **STAYED** pending arbitration.

**IT IS SO ORDERED.**

                                               */s/ Michael R. Barrett*
                                               Michael R. Barrett
                                               United States District Judge